**HC TULIFUA TINI P. LAM YUEN,**
**Senior Matai of the Tulifua Family for himself**
**and on behalf of the TULIFUA FAMILY, Plaintiff** .

v.

**TALAE TUITELE and HEIRS OF UAINE TUITELE,**
**TOM HO CHING, and PATRICIA HO CHING, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 10-93

July 13, 1998

Before RICHMOND. Associate Justice, and LOGOAI, Associate Judge.

Counsel: For Plaintiffs, Afoa L. Su`esu`e Lutu
For Defendants, Gata E. Gurr

## ORDER DENYING MOTION FOR
## RECONSIDERATION OR NEW TRIAL

This action principally concerns the ownership of about 14.18 acres of land, known as "Nonuaimoa," in the Village of Taputimu, American Samoa ("the land'), claimed by plaintiff Tulifua Tini P. Lam Yuan ("Tulifua") to be the Tulifua family's communal land and by defendants Talae Tuitele ("Talae") and Heirs of Uaine Tuitele ("the heirs") to be the individually owned land of the heirs. On April 24, 1998, the court held that the existing registration of the title to the land in the name of the heirs was valid. The court also held that the lease of a portion of the land by Talae to defendants Tom Ho Ching and Patricia Ho Ching was invalid and shall not be registered by the Territorial Registrar.

On May 4, 1998, Tulifua moved for reconsideration or new trial on the issue of the validity of the registration of the title to the land. The motion was heard on June 4, 1998.

### Discussion

Tulifua essentially urges the court to grant his motion for four reasons. First, he maintains that the registration is invalid because the required notice of the proposed registration was not posted for 60 days at two public places in the village in which or nearest to which the land is located. Second, he claims that the registration was fraudulently procured. Third, he argues that the court has failed to protect the Tulifua family from the unlawful alienation of its communal land. Fourth, he insists that the court's decision is null and void, and without legal effect,

because it was not rendered within the mandated 60-day time frame.

A. Registration Notice

■ When the process is conducted in accordance with A.S.C.A. §§ 37.0101-.0103, the Territorial Registrar's registration of land records title in the applicant's name which is good against the world; the record owner then holds title protected against all other claims of ownership, precluding later judicial inquiry into the validity of the title. *Ifopo v. Siatu`u*, 12 A.S.R.2d 24, 26 (Appellate Div. 1989); *Vaimoana v. Tuitasi*, 13 A.S.R.2d 76, 79 (Land & Titles Div. 1989). In the absence of compelling proof to the contrary, the court must conclude that the Registrar registers title to land when there is compliance with the title registration statutes. *Ifopo* at 28. A title registration will be set aside only when the evidence compels the conclusion that it was procured without the mandated notices and other procedures or by fraud. *Id.*

Tulifua places great emphasis on his witness Maeva Pio Maae, who lived in Taputimu as an untitled person when the survey was conducted in 1971 and as the Tulifua talking chief Maae when the land was registered in 1989. In essence, Maeva Maae testified that he did not hear any announcement or discussion about the intended survey of the land at any village council meeting in 1971 and did not see any notice of the proposed title registration posted in Taputimu in 1989. Tulifua also heavily relies on the patently defective "affidavit" of notice posting in 1989. This document was prepared on the initial posting date rather than after the 60-day posting period, makes literal reference to only one rather than two posting locations in Taputimu, and is unsworn.

■ The testimony of witnesses that they did not hear the notice of an intended survey, required by A.S.C.A. § 37.0102(c), or see posted notices of a proposed title registration, required by A.S.C.A. § 37.0103(a), is not sufficient to overcome the presumption that public officials complied with their statutory duties or the vesting of the title to land by the official registration. *See Meafu v. Taliu,* 13 A.S.R.2d 13, 17-18 (Land & Titles Div. 1989). The certificate of record in this case by the surveyor and *pulenu`u* that oral notice of the intended survey was given at a meeting of the village chiefs is regular. A properly completed affidavit of posting was not a required method of proving the posting when this registration process was initiated. Tulifua disregards or discounts the direct testimony of Uatisone Tauanuu, which we found and still find credible, that he posted the notice at two specific locations in Taputimu.[1]

---

[1] Tulifua was allowed, over objection, to cross-examine Tauanuu on the reason for his resignation from his position at the Territorial Registrar's

Tulifua does raise a questionable legal point. The evidence clearly showed that about one week after the posting of the notice of proposed registration, Au Maae, who was the *pulenu`u* in 1971, took down the notice posted adjacent to the land and brought it to the Territorial Registrar's Office. Pelema Kolise, the Registrar then in office, told Au Maae to submit in writing any objection he had to the registration within the 60-day posting period. Neither Au Maae, who is also a member of the Tulifua family, nor any other member of the family filed an objection. Pelema Kolise instructed Uattsone Tauanuu to replace the notice, but this was not done. However, the Registrar's contemporaneous practice was apparently to let the posting period run for at least 60 days before titles were registered, with or without routine checks on continuous existence of the posted notices.

■ Literally read, A.S.C.A. § 37.0103(a) contemplates the notices at the courthouse and two places in the appropriate village would remain constantly in place throughout the 60-day period. Uatisone Tauanuu testified to the ongoing practical problems of maintaining the posted notices in the villages where the notices can be easily removed by persons or destroyed by weather. Thus, we hold that 37.0103(a) does not require the continuous presence of all three notices, so long as the Registrar waits the full 60 days before registering the title, especially when, as in this case, at least one responsible member of the principal family adversely impacted is aware of the proposed registration.

B. Fraudulent Procurement

On this issue, Tulifua essentially relies on his history of the land. He claims that the land is the Tulifua family's communal land by reason of original occupancy and use. The Tulifua *matai* title is attached to Taputimu, where the land is located. The Tuitele *matai* title is associated with the Village of Leone. Uaine Tuitele was a member of both the Tulifua and Tuitele families, and his father Tulifua Penitila held the Tulifua title, beginning in 1906. As the Tulifua *sa`o,* Tulifua Penitila controlled and was obligated to protect the family's communal land,

---

Office. The innuendo planted was that Tauanuu had engaged in some scheme of wrongdoing pertaining to title registrations. However, whether the objective was to establish planned misconduct somehow related to the posting in this case or to impeach Tauanuu's character for truthfulness, Tulifua utterly failed to make the relevant connection.

Similarly, Tulifua now suggests in his memorandum supporting the present motion, wholly and improperly without any evidentiary basis, that the Territorial Registrar in 1989, Pelema Kolise, who also testified in this case, was likewise guilty of registration misdeeds.

including the land at issue.[2] Thus, Tulifua argues, since Uaine Tuitele and the heirs occupied and used the land as members of the Tulifua family, the heirs, represented by Talae, violated their responsibilities to the Tulifua family and fraudulently deprived the family of its communal ownership of the land when they had the land registered as the heir's individually-owned land.

■ Tulifua mistakenly states that we erroneously found the land to be the heirs' individually owned land before the 1989 title registration. If original registration was the contest in this case, we would necessarily be required to determine whether the land was the Tulifua family's communal land or was the heirs' individually-owned land owned before we could order registration of the title. However, in this case, we did not make any finding in the pre-registration title. The importance of the histories of the land presented by Tulifua and Talae lies in the unrefuted evidence that Uaine Tuitele and the heirs after him openly claimed the land, coupled with virtually exclusive occupancy and use of the land, since 1929. The only significant exception to this exclusivity was in 1968 when Tulifua's brother built a house on the land and then removed it upon Talae's objection.

Uaine Tuitele and the heirs did not deceive other members of the extended Tulifua family. Those other members were aware of the position taken by Uaine Tuitele and the heirs on the ownership of the land and failed to object either before or during the title registration process in 1989. We are not persuaded to reverse or, except as expanded in this discussion, otherwise add to our ultimate, initial finding that Talae and the heirs did not commit fraud when Talae offered the land for registration as the heirs' individually owned land.

C. Unlawful Alienation

Tulifua chastises the court for failing in its duty to uphold the constitutional policy of shielding Samoans from alienation of their lands. *See* Am. Samoa Rev. Const. art. I, § 3. This public policy is foundational and has endured uninterrupted throughout the 98-year history of American Samoa. *See* Cession of Tutuila and Aunuu, April 17, 1900, Chiefs of Tutuila-United States, and Cession of Manu'a Islands, July 16, 1904, King and Chiefs of Manu'a-United States. The Legislature of American Samoa has currently embodied the policy in A.S.C.A. tit. 37, particularly in ch. 37.01, Titles to Land, and ch. 37.02, Alienation of Land.

---

[2] According to the Territorial Registrar's official record of Taputimu *matai,* Tulifua Sianini co-held the title with Tulifua Penitila in 1906. Thus, both *sa`o* shared in these responsibilities during their joint tenure.

■ Unlike the Legislature, Tulifua does not clearly distinguish the substantive and procedural restrictions applicable to land title registrations in A.S.C.A. ch. 37.01 and those applicable to land alienation and registrations of deeds or other supporting documents in A.S.C.A. ch. 37.02. "'Alienation' means the sale, gift, exchange, or any other method of disposal of property." A.S.C.A. § 37.0201(a). Title registration is a procedural device giving rise to a form of estoppel precluding others from ever again attacking the validity of the record owner's title. *Vaimoana,* 13 A.S.R.2d at 79. Title registration is not a mode of land alienation.

■ Even if title registration is broadly construed to be a means of alienation, the constitutional policy statement does not prevent the creation of forms of land ownership other than communal land, and equally entitles the Samoan owners of individually owned lands and family communal lands to protection against the loss of their land. *See. Alai`asa v. Fanene,* LT No. 12-90, Order Granting or Deferring Motions to Dismiss at 17 (Land & Titles Div. August 5, 1997).

D. Untimely Decision

■ We do not take lightly the direction of A.S.C.A. § 3.0209(h) to render land and title decisions within 60 days. However, it is far more important for the court to carefully deliberate on these decisions. We will not be hurried to meet an artificial deadline. Moreover, the statutory requirement is aimed at the court and is without any sanctions. It does not, and should not, nullify or otherwise penalize any party to a land or title action in which the court issues a statutorily late decision.

**Order**

Tulifua's motion for reconsideration or new trial is denied.

It is so ordered.